654

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE O'NEAL, Defendant-Appellant.

Fourth District   No. 4—90—0010

Opinion filed October 4, 1990.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Following a jury trial conducted in the circuit court of Macon County, the defendant Eddie O'Neal was found guilty of armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2). Defendant was sentenced to serve an eight-year term of imprisonment.

In this appeal, the only issue raised is whether the trial court's denial of defendant's motion to suppress evidence was against the manifest weight of the evidence. At the hearing on the motion to suppress, after a stipulation was entered that the police acted without a warrant, evidence was adduced that on June 20, 1989, at approximately 11:37 p.m., three City of Decatur police officers, Kevin Hollingsead, Robert Whitten, and Larry Butler, were in the 100 block of Longview Place. The men were off duty and working as security officers for the Decatur Housing Authority. They were dressed in Decatur police uniforms.

While on patrol, they observed a 1979 Chevrolet van parked illegally in a fire lane, facing Marietta Street. Three people were in the van, one of whom was in the back seat. Initially, the officers only observed the two people who were sitting in the two captain's chairs in the front of the van. The officers observed other people standing outside the van, but those people moved away as the officers approached.

When the police pulled up, they placed their car in front of the van. Two officers approached the passenger side of the van, and the other officer approached the driver's side of the van. Hollingsead observed the defendant, who was seated in the driver's seat, bend down for two seconds toward the passenger's seat and then right himself. Butler thought he saw the defendant putting something between the two seats. Butler could not see the defendant's head after he ducked. Butler did not know if the defendant had anything in his hand or if he put anything to his face. As the officers approached the van, Whitten saw the defendant duck for a few seconds as though he were hiding something.

The passenger in the front seat was asked to step out and Butler conducted a pat-down search of this individual. Whitten conducted a pat-down search of the defendant, who also exited the vehicle. Without having received consent to search the vehicle, Hollingsead immediately entered the van and checked between the seats in the area where he had seen the defendant bend. Whitten heard Hollingsead cry out the word "gun." Hollingsead recovered a pistol which was inside a vinyl clutch purse. Hollingsead stated he found the clutch purse between the captain's chairs previously occupied by the passenger and defendant. The purse was found closer to the driver's seat than the passenger's seat. Hollingsead could not recall there being a console between the two chairs. Prior to Hollingsead's discovery of the weapon, Whitten did not see it and, therefore, did not know where it had been found. Butler remembered Hollingsead's looking in the van and hollering, "the gun." Hollingsead picked up the weapon, and the

officers took the subjects into custody.

According to Butler, the officers exited their vehicle in order to request the van be moved from the fire lane, but after observing the movement in the van, they told the occupants to get out of the van. The defendant was outside of the van before the search commenced. Butler did not know if the defendant was standing next to the door of the van at that time.

The defendant behaved cooperatively after Hollingsead directed the occupants to step out of the van. Whitten stated the officers searched the persons and the immediate area for their own personal safety. Whitten recalled the defendant was standing inches from the driver's side door and next to Whitten during the search. Whitten testified he found no weapons or drugs during the pat-down search of defendant. Nor did he search inside the van. Whitten did look into the van and observed there was no van console between the two front seats. Hollingsead testified the defendant's movement made him suspicious and drew his attention to the area between the front seats of the van. So, he had checked it for his own safety. Hollingsead recalled the defendant was 5 to 10 feet from the van on the driver's side when Hollingsead searched the van. After the pistol was found, the defendant was placed under arrest.

Over objection, Hollingsead was allowed to testify he was aware from his experience as a police officer that the area in which the van had been parked was a high-crime area and that, since May, this area had been a drug trafficking area. Over objection, Hollingsead also testified he had been detailed to the area several times in reference to shots being fired and there had been arrests of subjects with weapons in that vicinity.

Hollingsead further testified that, normally, for parking violations, violators receive parking tickets, whether or not the vehicle is occupied. Generally, when a vehicle is empty, the officer places a red ticket from the Housing Authority onto the car. Hollingsead did not issue a parking ticket in this case.

Police officer Kent Pope was dispatched to the area to pick up defendant. After the defendant was placed in the back of the squad car, the defendant began moaning. Pope could not understand the defendant for a while until the defendant eventually said he needed to spit. Pope told defendant to open his mouth and noticed pinkish objects floating in the defendant's saliva. The defendant said, "I have to vomit." After defendant vomited on the roadway, Pope observed in the defendant's vomit six to seven plastic bags, each containing a white powdery substance.

Pope identified the uniform citation and complaint which he had issued charging the defendant with illegal parking. Although Pope never saw the defendant in the van, the citation was based on information Pope received from the other officers.

■■■ In *People v. Lawrence* (1988), 174 Ill. App. 3d 818, 821-22, 529 N.E.2d 63, 65-66, this court noted that warrantless searches of motor vehicles are the exception to the requirement that a search warrant must first be obtained. In the case at bar, unlike the circumstances in *Lawrence*, the officers did not observe contraband in the van prior to the search. Instead, it was the movement by an occupant of the van which alerted the officers to the possibility of contraband being in the van. In addition, the officers were reasonably apprehensive for their own safety because the van was illegally parked in a neighborhood described as a high-crime area with a recent increase of drug trafficking. The officers were also aware of several reports of gunshots being fired and a number of arrests for weapons violations in the area.

In *People v. Watkins* (1974), 23 Ill. App. 3d 1054, 320 N.E.2d 59, an automobile was stopped for improper use of lights. After it was determined that the driver of the automobile did not have a driver's license, one of the arresting officers observed the movement of the passenger in the stopped automobile and, as a result, became reasonably apprehensive about his safety and the safety of his partner. The reviewing court upheld the trial court's determination that the subsequent search of the stopped vehicle was proper. A similar result is appropriate in the case at bar.

Defendant attempts to convince this court that the search was improper because defendant was not stopped for a penal offense, but for improper parking, which defendant describes as an administrative or civil violation. (Compare Ill. Rev. Stat. 1989, ch. 38, pars. 102—15, 107—14, 108—1.01 with Ill. Rev. Stat. 1989, ch. 95½, pars. 11—208.3, 11—1303(a)(2)(a).) However, as noted in *Watkins*, the United States Supreme Court in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, allowed for a limited search of an individual whose unusual conduct observed by an officer leads the officer to reasonably believe that criminal activity may be occurring and that the person the officer is confronting may be armed and dangerous. In *Watkins*, the court noted it would be illogical to allow the search of the individual while not allowing the officer to inspect the part of the vehicle wherein the movement was observed.

Therefore, it is not the parking violation which justifies the search of the vehicle in the case at bar. Instead, it is the observations of the

officers concerning the movement of the driver of the van which led the officers to reasonably suspect that criminal activity was afoot and that the persons in the van were armed and dangerous. Under these circumstances, the search was proper, and the denial of the motion to suppress by the trial court was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Macon County is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.